UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ABDUL KHALIQ VAYANI,

                        Plaintiff,              16-cv-1774 (JGK)

            - against -                         MEMORANDUM OPINION AND
                                                ORDER
146 WEST 29TH STREET OWNERS CORP.,
ET AL.,

                        Defendants.
_____

JOHN G. KOELTL, District Judge:

The plaintiff, Abdul Khaliq Vayani, brings this action pro se against his employer and various managers[1] ("the Employer defendants"); Service Employees International Union, Local 32BJ and various managers and employees of that union[2] ("the Union defendants"); and the Union's benefit funds and its various trustees and administrators[3] ("the Funds defendants"). The plaintiff alleges violations of a variety of federal and state

---

[1] The Employer defendants are 146 West 29th Street Owners Corporation, Berik Management, Berik Mangement's president Rikin Sheth, and Berik Management's former accountant Geeta Pathak.

[2] The Union defendants are Local 32BJ of the Service Employees International Union ("Local 32BJ"), and individual defendants Michael Fishman, Hector J. Figueroa, Todd Jenning, Denis Johnston, Mike Graham, and Thomas Giordano, all in their capacities as officers of Local 32BJ and/or the Service Employees International Union ("SEIU").

[3] The Funds defendants are Michael Fishman, Hector Figueroa, Kevin Doyle, Brian Lambert, Kyle Bragg, Larry Engelstein, John Pagnatta, Lenore Friedlander, Howard Rothschild, John Santora, Charles Dorego, Fred Ward, Susan Cowell, Regine Breton, Angelo Dascoli, Linda Nelson, and Alan Snyder, all in their official capacities as trustees, employer trustees, and/or administrators of the Local 32BJ Health Fund, Pension Fund, Supplemental Retirement and Savings Fund, Training Scholarship and Safety Fund, and/or Legal Services Fund.

laws related to the plaintiff's attempts to join Local 32BJ and gain coverage under the relevant Collective Bargaining Agreement ("CBA").

The Employer defendants, Union defendants, and Funds defendants move to dismiss all claims against them under Federal Rule of Civil Procedure 12(b)(6). In the alternative, the Funds defendants also request to convert the motion to dismiss to a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002).

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  Both the Funds defendants and the plaintiff have filed documents in connection with their pending motions.[4]  Accordingly, the Funds defendants' 12(b) motion is converted into a motion for summary judgment under Rule 56. See Cardona v. Vidal, No. 06-cv-13680 (JGK), 2008 WL 2856455, at *1 (S.D.N.Y. July 24, 2008).

Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[4] Rule 12(d) provides that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  The Funds defendants notified the plaintiff that their motion could be converted to a motion for summary judgment, advised the plaintiff of the requirements of Rule 56, provided a copy of that Rule, and advised the plaintiff to submit any evidence to support his claim.  See Docket No. 72.  The plaintiff does not appear to oppose the conversion of the motion, and submitted extensive documentary evidence as part of his opposition to the Funds defendants' motion to dismiss.  See Docket No. 92.  Thus, conversion is appropriate in this case.  See Cardona v. Vidal, No. 06-cv-13680 (JGK), 2008 WL 2856455, at *1 n.1 (S.D.N.Y. July 24, 2008); Rutigliano v. City of New York, No. 07-cv-4614, 2008 WL 110946, at *2 (S.D.N.Y. Jan. 2, 2008) ("[T]he essential inquiry [in a conversion] ... is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment. . . ." (quoting Krijn v. Pogue Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir. 1990) (internal quotation marks omitted))); see also Cantrell v. Igie, No. 16-cv-00903(JGK), 2016 WL 7168220, at *2 n.3 (S.D.N.Y. Dec. 8, 2016).

matter of law." Fed. R. Civ. P. 56(c); see also Matican v. City of N.Y., 524 F.3d 151, 154 (2d Cir. 2008). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); Gallo, 22 F.3d at 1223. In addition, the Court must give a pro se litigant special latitude in responding to a summary judgment motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). The Court must "read the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguments that they suggest." Id. (internal quotation marks and citation omitted); see also Cantrell v. Igie, No. 16-cv-00903(JGK), 2016 WL 7168220, at *1-2 (S.D.N.Y. Dec. 8, 2016).

## II.

### A.

The allegations in the Second Amended Complaint ("SAC") are accepted as true for the purposes of the Union defendants' and the Employer defendants' motion to dismiss. With respect to the

Funds defendants' motion for summary judgment, the facts are drawn from all of the evidence in the record and are construed in the light most favorable to the plaintiff.

In April 1990, the plaintiff was employed as a security guard by 146 West 29th Street Owners Corporation ("Owners Corp."). SAC ¶ 1. Berik Management is the managing agent of Owners Corp. See SAC Ex. 5 at 3. Owners Corp. had a CBA with union Local 32BJ but the agreement was unclear as to whether it applied to security guards. See SAC, Ex. 6 at 6 ("Arbitration Award"). Throughout his employment, the plaintiff made a number of unsuccessful attempts to join Local 32BJ and gain coverage under the CBA. See, e.g., SAC ¶¶ 24, 55.

Sometime in 2006, auditors for the Funds defendants audited Berik Management's accounts and determined that Berik Management should have made contributions to certain funds on Vayani's behalf.  Arbitration Award at 3.  While Berik Management disputed the claim, it ultimately settled with the Funds defendants by depositing $26,263.79 into benefits accounts on the plaintiff's behalf for the years 2004 and 2005, but the settlement did not explicitly address the issue of whether the plaintiff was covered by the CBA. See, e.g., SAC ¶¶ 21, 130; Arbitration Award at 3.  However, by March 19, 2008, Owners Corp. and Local 32BJ entered into a "Letter of Agreement" and explicitly agreed that "security guards are specifically

6

excluded from coverage under the [CBA]." SAC, Ex. 3.  It further appears that Berik Management made contributions to the plaintiff's Supplemental Retirement and Savings Fund account as recently as November of 2008.  See SAC ¶ 21; Ex. 7.

Upon learning that Owners Corp. had deposited funds on his behalf, the plaintiff engaged counsel to look into the matter. Arbitration Award at 4. The issue was brought before an arbitrator, with the Funds defendants claiming that the plaintiff was covered under the CBA.  Arbitration Award at 5. According to the Arbitration Award, counsel for the Funds defendants notified the plaintiff of the hearing, but he did not attend.  Arbitration Award at 5 n.*.  The arbitrator ultimately concluded that the plaintiff was not a member of the union and was not covered under the CBA, stating that the plaintiff had "been treated by his employer . . . and the Union as non-covered by the [CBA] during the period of his tenure, that such treatment was memorialized in the 2008 side letter, and that such treatment was not unreasonable under the circumstances." Arbitration Award at 6. The plaintiff was notified of the arbitrator's decision and received a copy of the Arbitration Award on March 13, 2010. SAC ¶ 119.

After the Arbitration Award, it appears that the Funds defendants returned the $26,263.79 to the Employer defendants, as well as $2,131.25 of the amounts previously contributed to

the plaintiff's Supplemental Retirement Savings Fund. <u>See</u> SAC ¶ 21. According to the plaintiff, a balance of $1,352 remains in his Supplemental Retirement Savings Fund.[5] SAC ¶ 21.

Thereafter, the plaintiff continued to attempt to get information regarding coverage under the CBA and his status as a union member from the Employer defendants, Union defendants, and Funds defendants. <u>See, e.g.</u>, SAC ¶¶ 101-05; Exs. 11, 18, 29, 30, 34. The plaintiff alleges that he did not receive any documentation from any of these requests, with the exception of one response to 2013 letters he sent to Local 32BJ. SAC ¶ 101, 103.

In December 2007, the plaintiff filed Charges of Discrimination against Berik Management with the Equal Employment Opportunity Commission ("EEOC"). SAC ¶ 66, Ex. 1. Berik Management served a position statement in response on October 15, 2008. SAC ¶ 9, Exs. 2, 5. In December of 2008, the EEOC dismissed the charges and sent the plaintiff a right to sue

---

[5] According to the Funds defendants, after the Arbitration Award, all amounts initially contributed by the Employer defendants in the plaintiff's name were refunded except the amounts related to the Supplemental Retirement Savings Fund because "a separate provision in the law had to be applied in the context of refunds of annuity fund contributions. The contributing employer did not press to be refunded these sums and hence the money remained in place in a segregated shell account for Vayani." <u>See</u> Funds Def.'s Reply, at 8 n.2. It appears that the $1,352 the plaintiff references as remaining in his account is the amount remaining in this segregated shell account.

letter, but the plaintiff did not pursue the claim because his son was diagnosed with leukemia. SAC ¶ 24; Ex. 19.

On March 10, 2016 the plaintiff filed this lawsuit by filing a complaint that listed certain defendants and statutes, expressed concern about the statute of limitations, but included no factual allegations. See Docket No. 1. The Court ordered the plaintiff to amend his complaint, and the plaintiff filed an Amended Complaint on July 8, 2016. See Docket Nos. 3; 10.  The plaintiff filed the SAC on December 16, 2016, and the present motions followed.

### III.

### A.

For purposes of deciding the motions seeking dismissal for failure to comply with statutes of limitations, it is plain that the plaintiff's claims cannot relate back to the date of the filing of his original complaint on March 10, 2016.  That complaint contained no factual allegations, and as such, defendants were not provided with "adequate notice of the matters raised" in the amended complaint filed on July 8, 2016. See ASARCO LLC v. Goodwin, 756 F.3d 191, 202 (2d Cir. 2014) (quotation marks and citation omitted) (determining that a newly added claim in an amended complaint did not relate back because the original complaint "contained no facts whatever about" the newly added claim); see also Fed. R. Civ. P. 15(c)(1)(B).

9

Accordingly, July 8, 2016 is the operative date for the purposes of analyzing the statutes of limitations for the plaintiff's claims.

### B.

The plaintiff asserts a variety of claims related to his exclusion from Local 32BJ and coverage under the CBA.  The Employer defendants argue that the plaintiff is collaterally estopped from asserting such claims as a result of the Arbitration Award determining that the plaintiff was excluded from coverage under the CBA.

There are two essential elements to collateral estoppel in New York. "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." Jenkins v. City of N.Y., 478 F.3d 76, 85 (2d Cir. 2007) (quoting Juan C. v. Cortines, 679 N.E.2d 1061, 1065 (N.Y. 1997)). "Generally a nonparty to the prior litigation may be collaterally estopped by a determination in that litigation only if he has 'a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation.'" Id. (quoting D'Arata v. New York Cent. Mut. Fire

Ins. Co., 564 N.E.2d 634, 637 (N.Y. 1990)). "Collateral estoppel appl[ies] to issues resolved by arbitration 'where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award.'" Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 267-68 (2d Cir. 1997) (quoting Hilowitz v. Hilowitz, 444 N.Y.S.2d 948, 949 (App. Div. 1981)).

Similarly, "[u]nder federal law, a party is collaterally estopped from relitigating an issue if a four-part test is met: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Westchester v. U.S. Dep't of Hous. & Urban Dev., 778 F.3d 412, 417 (2d Cir. 2015) (quoting Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998). "Moreover, collateral estoppel can be predicated on arbitration proceedings." See Boguslavksy, 159 F.3d at 720 (collecting cases). Under federal law, a nonparty may be bound by a prior proceeding if the nonparty was "adequately represented by someone with the same interests who [wa]s a party" in the prior proceeding. Taylor v. Sturgell, 553 U.S. 880, 894 (2008) (quotation marks and citation omitted). A party's representation of a nonparty in a prior proceeding may be adequate if: (1) the interests of the representative party in

11

the prior proceeding and the nonparty were aligned; (2) the
party understood that it was acting in a representative capacity
to the nonparty; and (3) notice of the original proceeding was
given to the nonparty alleged to have been represented.  See id.
at 901 (citations omitted).

Here, the Funds defendants sought arbitration to pursue a
claim identical to the one the plaintiff pursues in this action,
namely, to establish that "a guard named Abdul Vayani engaged by
the employer[,] was covered by the [CBA]."  Arbitration Award at
5.

By seeking CBA coverage for the plaintiff in the
arbitration proceedings, the Funds defendants sought to
establish the "rights" of the plaintiff with respect to his
coverage under the CBA, such that any "subsequent proceeding"
with respect to the plaintiff's CBA coverage was "conditioned in
one way or another on, or derivative of, the rights of the
[Funds defendants] to the prior [arbitration]."  Jenkins, 478
F.3d at 85; see also Jacobson, 111 F.3d at 267-68.

Similarly, the plaintiff and the Funds defendants interests
were aligned in that they both sought coverage for the plaintiff
under the CBA, and the Funds defendants understood that they
were representing the plaintiff's interests in the arbitration.
See Arbitration Award at 1 ("The Funds claim that the Employer
has failed and refused to pay benefit contributions on behalf of

12

Abdul Vayani, an employee eligible for said benefits under the terms of the [CBA]."); see also Taylor, 553 U.S. at 901. Moreover, it appears that the plaintiff was notified of the arbitration hearing but did not attend. See Arbitration Award at 5 n.*; see also Taylor, 553 U.S. at 901. The plaintiff admits that he received the arbitrator's decision on March 13, 2010, but did not challenge the award. See SAC at ¶ 119 (stating that counsel for the union "sent me an Arbitration Decision on March 11, 2010 by mail and I received [it] on March 13, 2010.").

The arbitrator ultimately concluded that the plaintiff "has been treated by his employer (or contractor) and the Union as non-covered by the [CBA] during the period of his tenure" and that as a result, "the claim advanced by the Funds must fail." Arbitration Award at 6. Accordingly, the plaintiff is collaterally estopped from pursuing claims seeking coverage under the CBA.

Because the Arbitration Award determined that the plaintiff was not a member of Local 32BJ and not covered under the CBA, the plaintiff has no standing to sue the Union defendants for breach of their constitution and bylaws. See Yerdon v. Henry, 91 F.3d 370, 379 (2d Cir. 1996) (dismissing claim for breach of union constitution because the plaintiff's allegations did not concern the plaintiff's rights as a member of the union). The

Court also lacks jurisdiction to hear the plaintiff's various claims asserting violations of the Labor Management Reporting and Disclosure Act ("LMRDA").  See Phelan v. Local 305 of United Ass'n of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, 973 F.2d 1050, 1056 (2d Cir. 1992) (concluding that the LMRDA regulates only the relationship between a union and its members, and noting that "courts have refused to entertain suits by plaintiffs against unions that have rejected them for membership").  And the plaintiff's various claims under the Employee Retirement Income Security Act of 1974 ("ERISA") are barred because under the relevant portions of 29 U.S.C. § 1132(a), civil actions under ERISA may be brought only by a plan participant or beneficiary, and the Arbitration Award, by concluding that the plaintiff was not covered under the CBA, established that the plaintiff is neither a participant or beneficiary under the relevant plans.[6]

The plaintiff alleges that the Employer defendants and the Funds defendants committed fraud against him based on alleged

---

[6] The plaintiff argues that he received annual statements as recently as 2016 from certain funds that began with "Dear Participant."  But the Arbitration Award confirmed that the plaintiff was not covered under the CBA, and thus was not a participant or beneficiary of the relevant funds.  It appears that this correspondence was sent to the plaintiff because certain amounts contributed on behalf of the plaintiff prior to the Arbitration Award were not refunded to the Employer defendants.  See supra n.5.  The plaintiff is advised to pursue internal remedies at the funds regarding any such amounts.

lies told at the arbitration hearing.  Fraud claims must be brought within a period that is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8).  The arbitration hearing was held on February 1, 2010, and the plaintiff could have discovered the fraud through reasonable diligence upon receiving a copy of the Arbitration Award on March 13, 2010.[7] SAC ¶ 119. Accordingly, because the plaintiff's July 2016 complaint was filed after February 1, 2016, his fraud claim based on alleged conduct at the arbitration hearing is time-barred.[8]

The plaintiff asserts a violation of Labor Management Relations Act, 29 U.S.C. § 185, ("LMRA") alleging that the

---

[7] To the extent that the plaintiff urges a vacatur of the Arbitration Award, such a claim is time-barred "because under New York law, an application to vacate or modify an arbitrator's award must be commenced within ninety days of receipt of the arbitrator's determination." Odom v. Doar, No. 11-cv-152 (DLC), 2011 WL 2923889, at *3 (S.D.N.Y. July 21, 2011) (citing N.Y. C.P.L.R. § 7511(a)), aff'd, 497 F. App'x 88 (2d Cir. 2012).

[8] The plaintiff also alleges an additional fraud claim against the Employer defendants for allegedly lying in their October 15, 2008 EEOC position statement.  But any such claim is time-barred because it was brought after "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). The plaintiff plainly possessed the position statement as early as January 15, 2014, when he quoted from it in a letter to the Secretary of Labor, and thus was required to file his claim, at the latest, by January 15, 2016. See SAC, Ex. 39 at 2. Because the plaintiff's fraud claim was filed in July 2016, it is time-barred.

Employer defendants breached the CBA and the Union defendants breached the duty of fair representation by excluding him from Local 32BJ and determining that he was not covered under the CBA. See, e.g., SAC ¶ 49.  When a plaintiff alleges both a breach of the CBA by his employer and a breach of the duty of fair representation by a union, he has pleaded "a hybrid [LMRA] § 301/fair representation claim." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983). Such claims are subject to a six-month statute of limitations[9] that begins to run at "the time he knew of the allegations that form the basis of his complaint." Carrion v. Enter. Assoc., Metal Trades Branch Local Union 638, 227 F.3d 29, 32 (2d Cir. 2000) (per curiam). The plaintiff alleges that he had attempted to join Local 32BJ since he began work in 1990, that he began writing letters to Local 32BJ requesting to join the union as early as 2003, and that on March 13, 2010, he received the Arbitration Award determining that he was not covered under the relevant CBA.  See SAC ¶¶ 24, 55, 119; Ex. 12.  The plaintiff therefore "knew of the

---

[9] The plaintiff cites to Auto Workers v. Hoosier Corp., 383 U.S. 696, 707 (1966), but that case applied Indiana's six-year statute of limitations for unwritten contracts and was a suit "brought by the union itself rather than by an individual employee." DelCostello, 462 U.S. at 162.  The Supreme Court in DelCostello confirmed that the six-month statute of limitations in § 10(b) of the LMRA governs a suit brought by an employee against an employer for breach of a CBA and a union for an alleged breach of the duty of fair representation.  Id. at 172.

allegations that form the basis of his complaint," at the very latest, in March 2010.  See Carrion, 227 F.3d at 32. Accordingly, the six-month statute of limitations had lapsed by the time the plaintiff's allegations in the current suit were filed in July of 2016.  The plaintiff's claims under 29 U.S.C. § 185 are therefore time-barred.

## C.

The plaintiff brings a number of claims against the Employer, Union, and Funds defendants under various provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO").  To establish a claim under civil RICO, a plaintiff must show a pattern of racketeering activity under RICO by pleading at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 237-39 (1989).  The limitations period for actions pursuant to civil RICO claims is four years. Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987). "A plaintiff's [RICO] action accrues against a defendant for a specific injury on the date that plaintiff discovers or should have discovered that injury." In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58 (2d Cir. 1998). The statute of limitations begins to run anew "each time a plaintiff discovers

17

or should have discovered a new and independent injury." Id. at 59.

Here, the plaintiff has failed to establish a pattern of racketeering activity because he has not pleaded at least two predicate acts of racketeering. The plaintiff alleges only one predicate RICO offense, claiming that the Union defendants accepted a bribe from the Employer defendants to exclude the plaintiff from membership into the union. See SAC ¶ 58. Accordingly, the plaintiff has failed to plead at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity. H.J. Inc., 492 U.S. at 237-39.

The plaintiff's claims under RICO are also barred by the statute of limitations. The plaintiff alleges that he learned of the alleged bribe in August of 2010. SAC ¶ 107. The plaintiff was therefore required to file his RICO claim within four years, by August of 2014. While the plaintiff contends that the subsequent renewal of the side agreement barring security guards from coverage under the CBA furthered the fraud, he does not allege that any additional bribes were paid. Moreover, renewal of the side agreement that simply confirmed the longstanding position -- as confirmed by the Arbitration Award -- that security guards were not covered under the CBA would not constitute a "new and independent" injury sufficient

to renew the statute of limitations.  <u>In re Merrill Lynch Ltd.</u>
<u>P'ships Litig.</u>, 154 F.3d at 59-60 (concluding that "continuing
efforts to conceal the initial fraud" were "not separate and
distinct fraudulent acts resulting in new and independent
injuries").  The plaintiff's RICO claims are time-barred.

D.

The plaintiff also brings a claim against the Employer and
Union defendants under 42 U.S.C. § 1981, alleging discrimination
on the basis of his Pakistani origin and his adherence to
Islam.[10]

The statute of limitations for a § 1981 claim is three or
four years depending on whether the claim is brought under the
original statute or the statute's 1991 amendments. <u>See</u> <u>Andrews</u>
<u>v. Freemantlemedia N.A., Inc.</u>, No. 13-cv-5174 (NRB), 2014 WL
6686590, *5 (S.D.N.Y. Nov. 20, 2014) (citing <u>Patterson v. McLean</u>
<u>Credit Union</u>, 491 U.S. 164 (1989)).  Accrual "begins 'when a

---

[10] A § 1981 claim cannot prevail when it is based "solely on the
place or nation of [a plaintiff's] origin, or [a plaintiff's]
religion." <u>St. Francis College v. Al-Khazraji</u>, 481 U.S. 604, 613
(1987).  But § 1981 does prohibit "discrimination based on 'ancestry
or ethnic characteristics.'" <u>Vill. of Freeport v. Barrella</u>, 814 F.3d
594, 605 (2d Cir. 2016) (quoting <u>Saint Francis Coll. v. Al-Khazraji</u>,
481 U.S. 604, 613 (1987)).  Because the plaintiff's § 1981 claims are
barred under the relevant statute of limitations, the Court does not
address the issue of whether the plaintiff's claims of discrimination
allegedly based on his Pakistani heritage would otherwise be
cognizable under § 1981. <u>But see</u> <u>Jafri v. Park Lane Hotel</u>, No. 93-cv-
3947 (CSH), 1994 WL 514539, at *3 (S.D.N.Y. Sept. 21, 1994) (denying a
§ 1981 claim alleging discrimination on the basis of the plaintiff's
Muslim faith and Pakistani national origin), <u>aff'd</u>, 62 F.3d 1412 (2d
Cir. 1995)(unpublished).

plaintiff knows or has reason to know of the injury that serves as the basis of the action.'" Id. at *6.

The most recent incident the plaintiff identifies to form the basis of his § 1981 claim against the Employer defendants occurred in 2009. See ¶¶ 150-59.  Even applying the longer statute of limitations of four years under § 1981, the plaintiff's § 1981 claims against the Employer defendants were time-barred before the filing of his complaint in July of 2016. While the plaintiff also alleges that the Employer defendants continued to exclude him from the CBA in 2012 and 2016, he knew he was excluded from coverage under the CBA at least as early as March 2010, when he received a copy of the Arbitration Award, and could have filed suit at any time thereafter.  This allegation, therefore, does not extend the statute of limitations.

As to the Union defendants, the only incident alleged by the plaintiff that form the basis of a § 1981 claim is the agreement with the Employer defendants to exclude security guards from CBA coverage in 2008, of which the plaintiff learned, at the latest, in March 2010. SAC ¶¶ 119, 159. Thus, any § 1981 claim against the Union defendants is time-barred because the plaintiff brought suit in July 2016, more than four years after the plaintiff learned of this agreement.

Accordingly, the plaintiff's § 1981 claims are time-barred.[11]

**D.**

The plaintiff appears to argue that the statutes of limitations on his claims should be equitably tolled or the defendants should be equitably estopped from raising a statute of limitations defense.

Equitable estoppel is an "extraordinary remedy." Pulver v. Dougherty, 871 N.Y.S.2d 495, 496 (App. Div. 2009) (Slip Op.); E. Midtown Plaza Hous. Co. v. City of New York, 631 N.Y.S.2d 38, 38 (App. Div. 1995).  Under New York law, the doctrine should be "invoked sparingly and only under exceptional circumstances." Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 265 (S.D.N.Y.

---

[11] The plaintiff also initially alleged violations of 18 U.S.C. §§ 1001, 1341, and New York Penal Law § 210, but now acknowledges that these statutes do not provide a private right of action.  See Docket No. 100, Pl's Mem. in Opp. to Union Def.'s Mot. to Dismiss at 28-29.
The plaintiff's claims under New York Judiciary Law § 487 are without merit because, by its terms, the statute only applies to attorneys or counselors.  The plaintiff does not allege that any of the present defendants were acting as attorneys or counselors, and "clients may not be held derivatively liable under the statute for the misconduct of their counsel." Polanco v. NCO Portfolio Mgmt., Inc., 23 F. Supp. 3d 363, 376 (S.D.N.Y. 2014).
The plaintiff also alleges that after beginning his employment at Owners Corp. in 1990, he did not receive overtime pay pursuant to the Fair Labor Standards Act until he was put on the payroll in 2009. SAC ¶¶ 1, 4.  To the extent that the plaintiff is seeking to recover for overtime pay from 2009 or earlier, the statute of limitations for such a claim expired by the time the plaintiff filed his claims in July 2016. Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999) (noting that the FLSA generally provides for a two-year statute of limitations, but allows a three-year limitations period for willful violations).

2006) (quoting <u>Matter of Gross v. New York City Health & Hosps.</u>
<u>Corp.</u>, 505 N.Y.S.2d 678, 679 (App. Div. 1986)).

"The doctrine of equitable estoppel applies where it would
be unjust to allow a defendant to assert a statute of
limitations defense." <u>Zumpano v. Quinn</u>, 849 N.E.2d 926, 929
(N.Y. 2006). This is the case where a plaintiff is "induced by
fraud, misrepresentations or deception to refrain from filing a
timely action." <u>Id.</u> (quoting <u>Simcuski v. Saeli</u>, 377 N.E.2d 713,
716 (N.Y. 1978)) (internal quotation marks omitted). Such fraud,
misrepresentations, or deception must be affirmative and
specifically directed at preventing the plaintiff from bringing
suit; failure to disclose the basis for potential claims is not
enough, nor are broad statements to the community at large. <u>See</u>
<u>Doe v. Kolko</u>, No. 06 Civ 2096, 2008 WL 4146199, at *4 (E.D.N.Y.
Sept. 5, 2008); <u>see also</u> <u>Twersky v. Yeshiva Univ.</u>, 993 F. Supp.
2d 429, 442 (S.D.N.Y.), <u>aff'd</u>, 579 F. App'x 7 (2d Cir. 2014).

The federal doctrine of equitable tolling applies to the
plaintiff's federal law claims. <u>See</u> <u>Feliciano v. U.S. Bank Nat.</u>
<u>Ass'n</u>, No. 13-cv-5555 (KBF), 2014 WL 2945798, at *6 (S.D.N.Y.
June 27, 2014) (citing <u>Zerilli-Edelglass v. N.Y. City Transit</u>
<u>Auth.</u>, 333 F.3d 74, 80 (2d Cir. 2003)). "Equitable tolling is
available in 'rare and exceptional circumstances,' where the
court finds that 'extraordinary circumstances' prevented the
party from timely performing a required act, and that the party

'acted with reasonable diligence throughout the period he sought to toll.'" Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 286 (S.D.N.Y. 2011) (citations omitted); see also Gonzalez v. J.P. Morgan Chase Bank, N.A., No. 16-cv-02611 (JGK), 2017 WL 122993, at *10 (S.D.N.Y. Jan. 12, 2017). "In order for 'extraordinary circumstances' to have prevented [the plaintiff] from timely filing his complaint, the information he sought from [the defendants] must have been necessary for that complaint to have been legally sufficient." Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005).

The crux of the plaintiff's argument is that he was unable to file his complaint because the defendants would not respond to his requests for information that he believed was necessary to file his lawsuit. But nearly all of the plaintiff's claims arise out of the dispute regarding his union membership status and coverage under the CBA. The plaintiff himself states that he has been seeking membership into the union and coverage under the CBA since he began his employment in 1990, and the Arbitration Award in March of 2010 confirmed that the plaintiff was not covered. That certain defendants failed to respond to the plaintiff's requests for additional information regarding CBA coverage does not warrant the application of equitable estoppel because the plaintiff has been aware that he was not covered under the CBA since, at the very latest, March of 2010.

See Twerksy, 993 F. Supp. 2d at 447-48 (declining to apply equitable estoppel where the plaintiffs were plainly already aware of their injuries).

Similarly, because the plaintiff has long been aware that he was not a union member covered under the CBA, rare and exceptional circumstances do not exist that would allow for the application of the federal doctrine of equitable tolling. See Walker, 430 F.3d at 564 (rejecting the argument that a plaintiff was entitled to equitable tolling because of a delay in a state court's response to his document request when the plaintiff "knew the facts supporting his claims"); Weslowski v. Zugibe, 14 F. Supp. 3d 295, 306-07 (S.D.N.Y. 2014) (rejecting a claim for equitable tolling because the plaintiff's allegation that the defendants refused to turn over documents prior to the filing of his complaint was "far from extraordinary" and the plaintiff did not explain why the documents were necessary). While the Court is mindful of the plaintiff's unfortunate circumstances with respect to his son's illness, the plaintiff's arguments to apply the doctrine of equitable estoppel to his state law claims and to equitably toll his federal claims are without merit.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained

above, the defendants' motions are **granted.** The Clerk is directed to enter judgment dismissing the Second Amended Complaint.  The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:     New York, New York**
**           August 11, 2017**        _____/s/_____
                                      **John G. Koeltl**
                              **United States District Judge**